UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                                                :
**XIAOGUANG JIANG**,                                            :
                                                                :
                                    Plaintiff,                  :
                                                                :     **MEMORANDUM DECISION AND**
                                                                :     **ORDER**
                        – against –                             :
                                                                :     22-CV-2272 (AMD) (TAM)
                                                                :
**AMERICAN EXPRESS NATIONAL BANK** and                          :
**THE CONSUMER FINANCIAL**                                      :
**PROTECTION BUREAU**,                                          :
                                                                :
                                    Defendants.                 :
--------------------------------------------------------------- X
**ANN M. DONNELLY**, United States District Judge:

On April 21, 2022, the plaintiff filed this *pro se* action against American Express

National Bank ("American Express") and the Consumer Financial Protection Bureau ("CFPB")

alleging violations of the Fair Credit Report Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and the

Truth in Lending Act, 15 U.S.C. §1601 *et seq*. ("TILA").  (ECF No. 1 at 2-4.)  The plaintiff also

brings state law claims for the Negligent Infliction of Emotional Distress.  (*Id.* at 4.)  The

plaintiff alleges that American Express did not apply an $8,446.41 payment to his credit card

account, and then erroneously informed credit reporting agencies that his account was

delinquent.  (*Id.* at 5.)  The plaintiff seeks $80 million in damages, as well as various forms of

injunctive relief to repair his credit score and reputation.  (*Id.* at 6.)

The CFPB and American Express move to dismiss the complaint for lack of subject

matter jurisdiction and for failure to state a claim.  (ECF Nos. 11, 16.)  For the reasons explained

below, I find that the Court lacks subject matter jurisdiction over the plaintiff's claims against the

CFPB and that the plaintiff's claims against American Express are barred by the doctrine of *res*

*judicata.*  Further, the plaintiff's motion to amend his complaint (ECF No. 21) is denied because amendment would be futile.[1]

## BACKGROUND

The following facts are drawn from the plaintiff's complaint, which I assume to be true for the purposes of this order, as well as documents either attached to, or incorporated by reference in the complaint.  *Targum v. Citrin Cooperman & Co., LLP*, No. 12-CV-6909, 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013).  I also take judicial notice of the state court documents attached to the declaration of Raymond A. Garcia, submitted in support of American Express's motion to dismiss.  *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 502 n.1 (S.D.N.Y. 2016) ("In deciding a motion to dismiss under Rule 12(b)(6), a court can take judicial notice of court documents."); *Bentley v. Dennison*, 852 F. Supp. 2d 379, 382 n.5 (S.D.N.Y. 2012) ("The Court takes judicial notice of the administrative and state court documents submitted by the defendants . . . because the facts noticed are not subject to reasonable dispute and are capable of being verified by sources whose accuracy cannot be reasonably questioned.").  Similarly, in order to determine whether the plaintiff's claims are barred by *res judicata*, I take judicial notice of the prior arbitration award.  *Cox v. Perfect Bldg. Maint. Corp.*, No. 16-CV-7474, 2017 WL 3049547, at *3 (S.D.N.Y. July 18, 2017) (citing Fed. R. Evid. 201(b)) ("[C]ourts have regularly taken judicial notice of arbitration awards . . . in

---

[1] The plaintiff's response to American Express's motion to dismiss was originally due by July 22, 2022. At the plaintiff's request, I extended that deadline to August 22, 2022.  (ECF No. 14.)  After the CFPB filed its motion to dismiss on July 26, 2022, I granted the plaintiff's request for extensions to September 22, 2022, and then to September 30, 2022.  (ECF Nos. 19, 20.)  On October 3, 2022, instead of filing a response to the motions to dismiss, the plaintiff moved to amend his complaint.  (ECF No. 21.) However, most of the memo accompanying the plaintiff's motion to amend addresses the defendants' arguments in support of dismissal.  (*See id.* §§ III.A-E.)  The plaintiff also submitted a 10-page declaration in support of his motion to amend, along with a 30-page reply to the defendants' responses to that motion.  (ECF Nos. 22, 28.)  Accordingly, I consider the pending motions fully briefed.

considering a motion to dismiss or to compel arbitration."); *see also Gorbaty v. Kelly*, No. 01-CV-8112, 2003 WL 21673627, at *2 n.3 (S.D.N.Y. July 17, 2003) ("As the arbitration complaint and award are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, the Court may take judicial notice of them and consider them in deciding the motion." (internal quotation marks and citations omitted)).

Finally, "where a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations." *Sommersett v. City of New York*, No. 09-CV-5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) (quoting *Milano v. Astrue*, No. 05-CV-6527, 2007 WL 2668511, at *2 (S.D.N.Y. Sept. 7, 2007).

## I.     The Disputed Payment

The plaintiff alleges that he made an $8,446.51 payment to American Express in February 2018, but that American Express did not apply the payment to the balance of his Plum Card account.  (ECF No. 1 at 5.)  Afterwards, American Express reported the plaintiff's account as delinquent to the credit reporting agencies, and hired collection agencies to "harass him." (*Id.*)  The plaintiff disputed that his account was delinquent, but American Express refused to remove the delinquency from his credit report.  (*Id.*)  The plaintiff also claims that after he filed a complaint with the CFPB, American Express submitted fraudulent billing statements to rebut the plaintiff's allegations before the agency.  (*Id.*)  When the plaintiff submitted a new complaint to the CFBP on November 13, 2021, the agency dismissed it as duplicative.  (*Id.*)

The plaintiff includes various account statements and correspondence from Capital One Bank, where he maintains his checking account, and American Express.  (ECF No. 1 at 7-46.)

A Capital One statement accessed on December 12, 2018, reflects an $8,446.51 payment to American Express on February 20, 2018, with a confirmation number of A6790.  (ECF No. 1

at 8.)  An American Express online payment history statement accessed on August 20, 2018,

reflects that the plaintiff made two $8,446.51 payments toward his credit card balance on

February 13, 2018 and February 19, 2018, respectively.  (*Id.* at 10.)  On the statement, both

payments are listed as "Returned."  (*Id.*)  The February 13th payment had the confirmation

number A6790, and the February 19th payment's confirmation number was W4772.  (*Id.*)

In either March or February of 2018, the plaintiff disputed the status of his payment with

American Express, which American Express investigated.  (*Id.* at 32.)  In an April 1, 2018 letter,

American Express told the plaintiff that it received an online payment for $8,446.51 on February

19, 2018, which it credited, but that Capital One did not honor the second payment of $8,446.51

because of insufficient funds.  (*Id.*)  American Express explained that it initially credited the

second $8,446.51 payment during its investigation, but added that sum back to the plaintiff's

account balance after determining Capital One never honored the second payment.  (*Id.* at 33.)

An undated online message from American Express to the plaintiff provides a somewhat

different order events, explaining that the February 19 payment was never honored because the

plaintiff did not authorize the withdrawal, but that the February 13 payment, which was

dishonored the first time it was presented to Capital One, was subsequently honored the second

time it was presented on February 20, 2018.  (*Id.* at 41.)  A March 22, 2018 letter from Capital

One reflects that the bank refunded the plaintiff $8,516.51 after he disputed an unspecified

payment.  (ECF No. 23 at 24.)

Later correspondence from American Express on October 7, 2021, clarified that the

plaintiff's February 13, 2018 payment was eventually honored and credited, but that Capital One

did not honor the February 19, 2018 payment, and thus it was not applied to his account.  (ECF

No. 1 at 12.)  American Express added that this payment history was fully reflected in the

4

plaintiff's April 2018 billing statement and that no missed payments were reported to the credit reporting agencies during this time. (*Id.*) American Express further explained that the delinquencies it ultimately reported to the credit report agencies arose from purchases the plaintiff made after the closing date for his February 2018 statement that the plaintiff never paid off. (*Id.* at 13.) After the plaintiff stopped making payments, American Express cancelled his account on October 18, 2018, and wrote off the plaintiff's debt as a loss on January 21, 2019. (*Id.*)

The plaintiff's account statements from February 2018, March 2018 and April 2018, which the plaintiff maintains are fraudulent, are consistent with the sequence of events described in American Express's October 7, 2021 letter. The plaintiff's balance at the beginning of the statement period ending on February 16, 2018 was $11,250.83, to which a single $8,446.51 payment, dated February 13, 2018, was applied. (*Id.* at 17.) The plaintiff then incurred new charges of $9,324.19 along with $38.00 in returned payment fees for an ending balance of $12,166.51. (*Id.*) The statement also contains 23 itemized charges incurred between January 21, 2018 and January 25, 2018 that total $9,3214.19. (*Id.* at 21-22.)

The plaintiff's balance at the beginning of the period ending on March 20, 2018, was $12,166.51. (*Id.* at 24.) The plaintiff's February 19, 2018 payment of $8,446.51 was applied to this balance, along with an $84.63 "Early Pay Discount." (*Id.* at 28.) The plaintiff then incurred new charges of $2,769.15 along with $38.00 in returned payment fees for an ending balance of $6,442.52. (*Id.* at 24.) Once again, the 17 itemized charges incurred between February 20, 2018 and March 19, 2018 total $2,769.15. (*Id.* at 28-29.)

Finally, the plaintiff's balance at the beginning of the period ending on April 19, 2018 was $6,442.52. (*Id.* at 34.) A payment of $6,656.07, dated March 29, 2018, was applied to the

plaintiff's balance along with a $38.00 "Credit Adjustment for Returned Payment Fee." (*Id.* at 38.) The plaintiff also incurred $232.55 in new charges. (*Id.*) The plaintiff's statement reflects that the February 19, 2018 payment for $8,446.51, which had been deducted from the plaintiff's balance in March, was added back to the plaintiff's balance accompanied by the note "RETURNED CHECK/DECLINED BANK TRANSACTIONS." (*Id.*) Thus, the plaintiff's ending balance for the April 2018 statement period was $8,427.51. (*Id.* at 34.)

**II.    State Court Litigation and Arbitration**

On January 30, 2019, the plaintiff filed an action captioned *Xiaoguang Jiang v. American Express Co.*, Index No. 653400/2019 in New York County Supreme Court alleging that American Express Company did not credit an $8,446.51 payment he made on February 20, 2018. (ECF No. 11-3 at 2.) In his state court complaint, the plaintiff alleged that he did not learn his account was delinquent until PayPal Pro rejected his credit application on November 23, 2018, and that American Express's refusal to credit his payment "caused many troubles to [his] personal life and [his] business." (*Id.* at 3.)

On May 18, 2020, American Express, noting that "American Express National Bank" rather than "American Express Company" was the proper defendant in the plaintiff's state court action, moved to compel arbitration pursuant to the terms of the Cardmember Agreement governing the plaintiff's credit card account. (ECF No. 11-4 at 1.) On June 24, 2020, the state court granted American Express's motion, determining that the arbitration clause in the Cardmember Agreement was mandatory and the plaintiff had assented to its terms. (ECF No. 11-5 at 2-3.) The state court stayed the plaintiff's case pending the completion of arbitration. (*Id.* at 4.)

On September 8, 2020, the plaintiff commenced an arbitration with the American Arbitration Association captioned *Xiaoguang Jiang v. American Express Company*, AAA Case

No. 01-20-0014-7919.  (ECF Nos. 11-2 at 2, 11-8 at 2.)  Arbitrator Kabir Duggal held a preliminary conference on March 9, 2021, at which the parties agreed that the dispute would be resolved on a "documents-only" basis without the need for an in-person hearing.  (*Id.*)  The plaintiff submitted an amended dispute summary on April 14, 2021, since he had not identified any causes of action in his first dispute summary.  (*Id.*)  On April 22, 2021, American Express sought permission to file a motion to dismiss the plaintiff's claims.  (*Id.*)  On May 28, 2021, arbitrator Duggal gave the plaintiff until June 30, 2021, to amend his dispute summary a second time; the plaintiff filed an amended summary on that date.  (*Id.*)

In his second amended dispute summary, the plaintiff made nearly identical allegations to the allegations in his state court complaint.[2]  (*See* ECF No. 11-8.)  The plaintiff alleged that American Express withdrew $8,446.51 from his Capital One checking account on February 20, 2018, but marked the payment at "Returned" and never applied the payment to his credit card balance.  (*Id.* at 2.)  The plaintiff also alleged that American Express improperly reported a delinquency on his credit card account to the credit reporting agencies, and assigned his debt to three different collection agencies who repeatedly harassed him on his cell phone and at his office.  (*Id.*)  The plaintiff asserted claims for violations of the FCRA, TILA as well as claims for breach of contract and the negligent and intentional infliction of emotional distress.  (*Id.* at 6-7.)

On November 28, 2021, the arbitrator dismissed the plaintiff's claims in their entirety with prejudice.[3]  (*Id.* at 4.)  She concluded that the plaintiff did not establish that American Express failed to comply with the FCRA.  (*Id.*)  She also found that TILA did not apply to business credit cards, like the plaintiff's Plum Card, and that evidence of calls from debt

---

[2] The allegations are also the same as those the plaintiff makes in this federal action.

[3] Arbitrator Duggal recused himself, and Maura A. Smith replaced him.  (*Id.* at 4.)

collectors did not satisfy the applicable objective standard for either the negligent or intentional infliction of emotional distress.  (*Id.* at 4.)

On December 27, 2021, the AAA formally closed the plaintiff's arbitration as dismissed.  (ECF No. 11-2 at 3.)  On May 6, 2022, American Express moved to confirm and enter the arbitrator's final award in state court.  That motion is still pending.  (*Id.*)

## LEGAL STANDARD

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate" the claim. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Rule 12(b)(6) dismissal is warranted when the complaint does not "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Specifically, the complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the plaintiff bears the burden of proving that subject matter jurisdiction exists, *Makarova*, 201 F.3d at 113, the defendants must establish that dismissal under Rule 12(b)(6) is warranted.  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *abrogation on other grounds recognized by Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 94 (2d Cir. 2019).

A court reviewing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6) must accept as true the complaint's factual allegations and draw all reasonable inferences in the non-moving party's favor.  *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).  Moreover, the Court must construe a *pro se* complaint "liberally" and interpret it to

"rais[e] the strongest arguments [it] suggest[s]." *McCray v. Lee*, 963 F.3d 110, 116 (2d Cir. 2020) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

## DISCUSSION

**I.**   **Subject Matter Jurisdiction**

The Court does not have subject matter jurisdiction over the plaintiff's claims against the CFPB, a federal agency, because it is immune from suit.  Thus, the agency must be dismissed from this action.  *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) ("A complaint will be dismissed as frivolous when it is clear that the defendants are immune from suit.").  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also Chapman v. U.S. Dep't of Just.*, 558 F. Supp. 3d 45, 49 (E.D.N.Y. 2021) ("It is well established that 'the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.'") (quoting *U.S. v. Mitchell*, 463 U.S. 206, 212 (1983)).

The Second Circuit has not decided whether the FCRA contains a waiver of sovereign immunity, but other courts in this District have held that it does not.  *Edelman v. United States Gov't*, No. 18-CV-2143, 2020 WL 7123175, at *7 (E.D.N.Y. Dec. 4, 2020) ("Because the FCRA does not contain a clear and unequivocal waiver of the Government's sovereign immunity, this Court is without subject matter jurisdiction to adjudicate Plaintiff's FCRA claims against the Federal Defendants.");  *Stein v. United States Dep't of Educ.*, 450 F. Supp. 3d 273, 277 (E.D.N.Y. 2020) ("An examination of FCRA's text supports a finding that it does not contain a waiver of sovereign immunity.").  Moreover, TILA expressly provides that "[n]o civil or criminal penalty provided under this subchapter for any violation thereof may be imposed upon the United States or any department or agency thereof."  15 U.S.C. §1612(b); *see also Nath v. JP Morgan Chase Bank*, No. 15-CV-3937, 2016 WL 5791193, at *10 (S.D.N.Y. Sept. 30, 2016)

("TILA includes a provision expressly preserving sovereign immunity." (internal quotation marks and citation omitted)).

Finally, while the Federal Tort Claims Act provides a limited waiver of sovereign immunity in instances where federal officers commit torts within the scope of their employment, 28 U.S.C. §§ 1346(b)(1), 2671 *et seq.*, the Act requires "that a claimant exhaust all administrative remedies before filing a complaint in federal district court.  This requirement is jurisdictional and cannot be waived."  *Collins v. United States*, 996 F.3d 102, 109 (2d Cir. 2021) (quoting *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005)). Since the plaintiff has not alleged any facts suggesting he has pursued any administrative remedy with the CFPB, he has not established that the Court has subject matter jurisdiction over any potential tort claims against the agency.  Accordingly, the plaintiff's claims against the CFPB are dismissed.

## II.   *Res Judicata*

While the Court can properly exercise subject matter jurisdiction over the plaintiff's FCRA, TILA and tort claims against American Express, dismissal of these claims is warranted pursuant to Federal Rule of Civil Procedure 12(b)(6); the claims the plaintiff asserts in this action are the same as those he asserted in his state court action and subsequent arbitration, and are therefore barred by the doctrine of *res judicata.*  (ECF No. 11-1 at 1.)  "Second Circuit case law makes it clear that affirmative defenses such as *res judicata*, also known as claim preclusion, and collateral estoppel, also known as issue preclusion, are proper arguments to submit to the Court for consideration on a motion to dismiss."  *ACS Recovery Servs., Inc. v. Figueiredo*, No. 07-CV-7359, 2008 WL 11517824, at *3 (S.D.N.Y. Jan. 15, 2008); *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86-87 (2d Cir. 2000)) ("Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a

defendant raises claim preclusion or . . . and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.").

Because the arbitrator's award against the plaintiff was "rendered in the context of a New York state action, the preclusive effect in federal courts of those state court judgments is determined by New York law." *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 265 (2d Cir. 1997) (internal quotation marks and citations omitted). In New York, "res judicata bars successive litigation of all claims based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *Sheffield v. Sheriff of Rockland County Sheriff Dep't*, 393 F. App'x 808, 811 (2d Cir. 2010) (alterations omitted) (quoting *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122 (2008)). New York applies a "transactional approach" to *res judicata*, which means that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan*, 263 F.3d 196, 200 (2d Cir. 2001) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)).

### a. Judgment on the Merits

#### i. Finality

"Under New York law, an arbitration award constitutes a previous adjudication on the merits." *Caron v. TD Ameritrade*, No. 19-CV-9015, 2020 WL 7027593, at *5 (S.D.N.Y. Nov. 30, 2020). While American Express's motion to confirm the arbitration award dismissing the plaintiff's claims is still pending in state court, the arbitration award nevertheless has preclusive

effect because "no vacatur motion is pending and the time limit in which to file a vacatur motion has expired." *Emerson Elec. Co. v. Holmes*, No. 16-CV-1390, 2020 WL 4592808, at *16 (E.D.N.Y. Aug. 11, 2020) (citing *Glob. Gold Mining, LLC v. Ayvazian*, 612 F. App'x 11, 13 (2d Cir. 2015)); *see also Jacobson*, 111 F.3d at 267-68 ("*res judicata* and collateral estoppel apply to issues resolved by arbitration where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award.") (citations omitted).  The plaintiff concedes that he received the arbitrator's final award on November 18, 2021.  (ECF No. 22 at 8.) Under both New York and federal law, he had 90 days to move to vacate or modify the arbitration award, *see* 9 U.S.C. § 12, *et seq.*; N.Y. C.P.L.R. 7511 (McKinney), meaning that he had until February 16, 2022, to file any such motion.  However, the plaintiff did not request that the state court "dismiss the invalid arbitration award" until after that time had expired, on May 24, 2022, in his opposition to American Express's motion to confirm the arbitration award. *Jiang v. Am. Express Co.*, No. 653400/2019, NYSCEF No. 95 at 5 (N.Y. Sup Ct. May 22, 2022). Accordingly, the arbitration award is a final determination.

> i.  *On the Merits* [4]

The plaintiff argues that the arbitrator's ruling was not a judgment on the merits because the "arbitrator only ruled that claims pled by Plaintiff are insufficient to state causes of action upon which relief could be granted."  (*Id.*)  According to the plaintiff, the arbitrator's final award "just rests upon the procedural grounds, frauds and corruption . . . and does not rest on the merits."  (*See* ECF No. 28 at 7.)  The plaintiff takes particular issue with the arbitrators' refusal

---

[4] In his opposition, the plaintiff cites the standard for collateral estoppel, (*see* ECF No. 21-1 at 14 ("A party seeking to invoke collateral estoppel must establish . . .")), but American Express does not assert collateral estoppel against him.  For example, the plaintiff argues he was not given a "full and fair opportunity to litigate his claim against American Express (ECF No. 21-1 at 12), but the "full and fair opportunity" to litigate is an element of collateral estoppel not *res judicata* under New York law. *Morales v. NYC Dep't of Educ.*, 808 F. App'x 35, 38 (2d Cir. 2020).

to allow discovery regarding plaintiff's allegations that American Express furnished fraudulent monthly statements to the plaintiff and the CFPB.  (*See* ECF No. 28 at 2-4.)

New York courts sometimes decline to give preclusive effect to actions that are "dismissed solely for defects in the pleading."  *Avins v. Fed'n Emp. & Guidance Serv., Inc.*, 67 A.D.3d 505, 506 (1st Dep't 2009); *Hodge v. Hotel Emps. & Rest. Emps. Union Loc. 100 of AFL-CIO*, 269 A.D.2d 330, 331 (1st Dep't 2000) ("The prior action having been dismissed solely for defects in the pleading, the present action is not barred by the doctrine of res judicata.").  Under New York law a "judgment dismissing a cause of action before the close of the proponent's evidence is not a dismissal on the merits unless it specifies otherwise[.]"  N.Y. C.P.L.R. 5013 (McKinney).

In this case, however, the application of *res judicata* is not foreclosed merely because the arbitration was dismissed before significant discovery took place.  The arbitration award explicitly states that the plaintiff's claims against American Express are dismissed "with prejudice."  (*Id.* at 5.)  The New York Court of Appeals has held that a "dismissal 'with prejudice' generally signifies that the court intended to dismiss the action 'on the merits,' that is, to bring the action to a final conclusion against the plaintiff.")  *Yonkers Contracting Co. v. Port Auth. Trans-Hudson Corp.*, 93 N.Y.2d 375, 380 (1999); *Coleman v. Coleman*, 1 A.D.3d 833, 834 (3d Dep't 2003) ("An order of dismissal is entitled to res judicata effect where the circumstances evince that it is on the merits or with prejudice to relitigation of the earlier claim."); *see also Strange v. Montefiore Hosp. & Med. Ctr.*, 59 N.Y.2d 737, 739 (1983) ("CPLR 5013 does not require that the prior judgment contain the precise words 'on the merits' in order to be given *res judicata* effect; it suffices that it appears from the judgment that the dismissal was on the merits.").

Furthermore, the arbitrator did not dismiss the plaintiff's claims against American Express "solely for defects in the pleading."  Rather, after affording the plaintiff "ample opportunity to present his claims, together with support evidence," the arbitrator determined the plaintiff had "failed to satisfy the essential predicate required to support an FCRA claim," that his business credit card account was not subject to TILA protections, and that he had "failed to present evidence" to support his state law tort claims.  (ECF No. 11-8 at 4.)

As the Second Circuit observed, "New York courts have held that the substance of the holding matters more than the utterance of specific words" when determining whether a prior judgment was on the merits and entitled to *res judicata* effect.  *Howard Carr Companies, Inc. v. Cumberland Farms, Inc.*, 833 F. App'x 922, 923 (2d Cir. 2021); *see also Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 473 (S.D.N.Y. 2009) ("To determine the res judicata effect of a prior claim requires examination of what was intended by the first decision and what the logical consequences of that decision are." (internal quotation marks and citations omitted)).

In this case, the arbitrator clearly intended that the award be final.  Indeed, before dismissing the plaintiff's claims, the arbitrators gave him two opportunities to amend his dispute summary.  When the plaintiff was still unable to make a persuasive claim, arbitrator Smith dismissed his claims with prejudice, clearly recognizing that further amendment would be futile. "[W]here a complaint is dismissed and leave to amend is denied, 'the denial constitutes a final judgment sufficient to preclude any claims contained in the proposed amended complaint.'" *Moscati v. Kelly*, No. 15-CV-04641, 2016 WL 3034495, at *6 (S.D.N.Y. May 26, 2016) (quoting *Casciani v. Town of Webster*, 501 F. App'x 77, 79 (2d Cir. 2012); *see also Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*, 80 A.D.3d 453 (1st Dep't 2011) (dismissal that "was not

merely a dismissal for a technical pleading defect, but a dismissal manifestly on the merits, based

on a finding that [the] plaintiff's own admissions precluded him from prevailing on his cause of

action against such defendants, regardless of what other facts he might allege," entitled to *res

judicata* effect) (citing *Lampert v. Ambassador Factors Corp.,* 266 A.D.2d 124, 124 (1st Dep't

1999).

### b.    Mutuality

The plaintiff maintains that *res judicata* does not bar his claims because American

Express Company, and not American Express National Bank, was the defendant in the prior

action.  (ECF No. 21-1 at 12.)  But the plaintiff is the party against whom *res judicata* is being

asserted; "thus it is irrelevant whether defendants were named parties to the prior proceeding."

*Barash v. N. Tr. Corp.*, No. 07-CV-5208, 2009 WL 605182, at *8 (E.D.N.Y. Mar. 6, 2009).

Strict "mutuality of parties has been abandoned as a requirement under the doctrines of collateral

estoppel and *res judicata* . . . because it has come to be widely accepted that usually little good

and much harm can come from allowing a determined plaintiff to retry the same issues in

exhausting fashion against successive defendants."  *Pompano-Windy City Partners, Ltd. v. Bear,

Stearns & Co.*, No. 87-CV-7560, 1993 WL 42786, at *7 (S.D.N.Y. Feb. 17, 1993).

In any event, American Express National Bank appeared and defended both the state

court litigation and arbitration.  (*See* ECF No. 11-4 ("Defendant American Express National

Bank (incorrectly designed in the Petition as "American Express Company") . . . hereby moves

to stay all proceedings and compel arbitration of this matter[.]).)  As American Express

explained in the state court proceedings, American Express Company "does not directly issue

credit or charge cards.  AEC is a bank holding company, and the parent company of American

Express National Bank."  (ECF No. 11-4 at 10.)

In addition, the distinction between a corporate parent and its subsidiary is "insignificant" for *res judicata* analysis. *Barash*, 2009 WL 605182, at *8; *see also Wilson v. Ltd. Brands, Inc.*, No. 08-CV-3431, 2009 WL 1069165, at *3 (S.D.N.Y. Apr. 17, 2009) ("Because LBI is merely a holding company of which VSS is a wholly-owned subsidiary, and the defenses raised by VSS sufficiently represented LBI's interests, VSS and LBI are in privity for res judicata purposes."); *Holmes v. City of New York*, No. 19-CV-1628, 2020 WL 918611, at *7 (S.D.N.Y. Feb. 26, 2020) ("Even though [the plaintiff] named Amazon.com, LLC (the "LLC"), rather than Amazon.com, Inc., as the defendant [the first action], the parties are in privity for res judicata purposes because the LLC is Amazon's wholly-owned subsidiary.").

The plaintiff does not dispute that he was the plaintiff in both the state court action and ensuing arbitration. (*See* ECF No. 22 ¶¶ 2, 6 ("After feeling helpless and anxious about the debt collection and delinquency wrongfully added in my credit report, I commenced an action against American Express Company in the Supreme Court of the State of New York, County of New York . . . I did not have choice but to commence the arbitration[.])"). Accordingly, the second element of *res judicata* is satisfied. *Kiryas Joel All. v. Vill. of Kiryas Joel*, 495 F. App'x 183, 186 (2d Cir. 2012) (*res judicata* applies when "the previous action involved the plaintiffs or those in privity with them").

### c.   Same Transaction

The factual allegations in the plaintiff's federal complaint are identical to the state court allegations and the claims he made at arbitration. (*Id.*) Just as he did in the prior litigation, the plaintiff asserts that American Express did not apply his February 2018 payment for $8,446.51 and then improperly reported his account as delinquent to the credit reporting agencies. (*See* ECF Nos. 1 at 5; 11-3 at 2; 11-7 at 3).

Nevertheless, the plaintiff says that this action arises from a different transaction; he argues that the arbitration focused on whether American Express applied the February 2018 payment to his debt, while his claim in this action is that American Express furnished inaccurate information to the credit reporting agencies in violation of the FCRA.  (ECF No. 28 at 25.)  His filings in the arbitration refute that characterization.  In the arbitration dispute summary, the plaintiff explicitly alleged that "AMEX failed its duty to investigate and review all the relevant information related to the accuracy of the payment in violation of Section 1681s-2 [of the FCRA.]"  (ECF No. 11-7 at 3.)  The plaintiff also alleged that "AMEX's violation was willful because it consciously continued to try to cover up its error in violation of the FCRA."  (*Id.*)  In that dispute summary, the plaintiff repeatedly cited the monthly statements, which he now alleges are fraudulent.  (*Id.* at 4.)

The record demonstrates unequivocally that the plaintiff's claims "arise from the same nucleus of operative fact" as those settled in arbitration.  *Cameron v. Church*, 253 F. Supp. 2d 611, 620 (S.D.N.Y. 2003).  "Where material factual allegations overlap, 'the facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit.  It is instead enough that the facts essential to the second were already present in the first.'"  *Id.* (quoting *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110-11 (2d Cir. 2000)).  When the plaintiff filed the state court action in 2019, he asserted the same facts that he asserts in this action: the dispute over the $8,446.51 payment in February 2018, the allegedly fraudulent monthly statements from American Express, and the delinquency on the plaintiff's credit report.  "[A] plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)."  *Waldman*, 207 F.3d at 110.  In short, because the plaintiff could have asserted the FCRA, TILA and tort

claims against American Express in arbitration, those claims are barred by *res judicata*. Accordingly, the claims against American Express are dismissed.[5]

## III.   Amendment Would be Futile

The plaintiff seeks leave to file an amended complaint so that he may add "more facts and documents to plead claims and issues sufficiently," and add three credit reporting agencies— Equifax Inc., Transunion LLC, and Experian PLC—as defendants.  (ECF No. 21-1 at 16.)  These amendments would be futile, so the request is denied.  *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("Leave to amend may properly be denied if the amendment would be 'futil[e].'" (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))); *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224-25 (2d Cir. 2017) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.") (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); *Calvino v. Rivera*, No. 20-CV-0872, 2020 WL 527931, at *1 (S.D.N.Y. Feb. 3, 2020) (dismissing complaint as frivolous without leave to amend where "the defects in Plaintiff's complaint cannot be cured with an amendment").

---

[5] Because the plaintiff's claims against American Express are barred by *res judicata*, the Court need not decided whether the plaintiff has alleged sufficient facts to state claims under the FCRA or TILA. However, these claims would almost surely be dismissed.  "Allegations in the complaint that are contradicted by more specific allegations or documentary evidence are not entitled to a presumption of truthfulness."  *Targum*, 2013 WL 6087400, at *3 (internal quotation marks and citations omitted); *see also Gupta v. Headstrong, Inc.*, No. 17-CV-5286, 2019 WL 4256396, at *4 (S.D.N.Y. Sept. 9, 2019) ("Since the notification letter is explicitly referenced in the Amended Complaint, and directly contradicts [the plaintiff's] allegations of fraud and mistake, those allegations are insufficient to survive [the defendant's] motion to dismiss.").  The plaintiff's allegations that American Express furnished fraudulent monthly statements are flatly contradicted by the statements themselves, which reflect over 50 transactions with no arithmetic error.  While the plaintiff disputes the payment records in his monthly statements, he never disputes the records reflecting the incurrence of the actual debt he now insists he does not owe.  If the monthly statements are indeed fraudulent, American Express would have had to fabricate dozens of individual charges rather than just a single line item applying the $8,446.51 payment, but this inference is implausible.

The plaintiff's complaint is not defective because it lacks detail, but because it is barred by *res judicata*. The claims in the proposed amended complaint are entirely predicated on American Express's alleged failure to credit the $8,446.51 payment in February of 2018. (*See* ECF No. 23 ¶ 10 ("In February 2018, Defendant American Express charged $8,446.51 twice from Plaintiff's Capital One checking account . . . [but] failed to apply either of the payments towards the plaintiff's account.").)

The plaintiff's proposed claims against the credit reporting agencies are similarly barred by *res judicata*, which applies "'not only as to what was pleaded, but also as to what could have been pleaded.'" [6] *Cameron*, 253 F. Supp 2d at 619 (quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2d Cir. 1985)). In the proposed amended complaint, the plaintiff faults the credit reporting agencies for not investigating the circumstances of the disputed $8,446.51 payment to American Express, and the ensuing delinquency on his credit report. (ECF No. 23 ¶ 34.) But these proposed claims plainly "spring from the same transaction or claim," because they are "related in time, space [and] origin" and "form a convenient trial unit." *Cameron*, 253 F. Supp 2d at 619-20.

---

[6] Even if the plaintiff's proposed claims against the credit reporting agencies were not barred by *res judicata*, they would likely fail as a matter of law. "In actions under Section 1681e or Section1681i [of the FCRA], the threshold question is whether the disputed credit information is inaccurate." *Cabrera v. Experian*, No. 21-CV-8313, 2021 WL 5166980, at *3 (S.D.N.Y. Nov. 5, 2021). Credit reporting agencies "cannot be held liable when the accuracy at issue requires a legal determination as to the validity of the debt the agency reported; conversely, [credit reporting agencies] can only be held liable for FCRA claims when the information reported does not match the information furnished." *Sessa v. Linear Motors, LLC*, 576 F. Supp. 3d 1, 12 (S.D.N.Y. 2021). In the proposed amended complaint, the plaintiff does not allege that the credit reporting agencies did not accurately report any information furnished by American Express. Instead, he disputes the legal validity of the debt itself. (ECF No. 23 ¶ 15.) But no amount of further investigation on the part of the credit agencies would have resolved the plaintiff's dispute with American Express, which maintains that the plaintiff never repaid his debt. *See Fashakin v. Nextel Commc'ns*, No. 05-CV-3080, 2009 WL 790350, at *11 (E.D.N.Y. Mar. 25, 2009) (dismissing FCRA claims when "[n]o reasonable reinvestigation by TransUnion, even had it contacted Nextel to determine the status of the debt, would have resulted in the debt being removed from plaintiff's credit report.").

The plaintiff maintains that he did not raise these issues with the credit reporting agencies until April 2021, because "he did not know anything about the FCRA and did not think he should present the payment dispute to any third parties like the CRAs[.]"[7]  (ECF No. 23 ¶ 34.)  "It is true that res judicata will not bar a suit based upon legally significant acts occurring *after* the filing of a prior suit that was itself based upon earlier acts."  *Waldman*, 207 F.3d 105 at 113 (emphasis in original).  However, the *res judicata* "bar will apply when the subsequent facts are merely additional examples of the earlier-complained of conduct, such that the action remains based principally upon the shared common nucleus of operative facts."  *Cameron*, 253 F. Supp 2d at 620 (internal quotation marks omitted).  The plaintiff's claims are based on the single $8,446.51 payment, and his claims against the credit reporting agencies are simply "additional examples" of failures to investigate the validity of the plaintiff's debt to American Express. (ECF No. 23 ¶ 34.)

"Furthermore, the leading cases in which courts have declined to hold *res judicata* applicable to claims arising from events post-dating the commencement of the prior litigation did not involve situations in which the prior complaint was in fact amended after the occurrence of the events."  *Cameron*, 253 F. Supp 2d at 620.  In his proposed amended complaint, the plaintiff states that Equifax completed its investigation in response to the plaintiff's dispute on April 19, 2021, and that TransUnion completed its investigation on May 7, 2021.  (ECF No. 23 ¶ 34.)  The arbitrator gave the plaintiff until June 30, 2021, to submit a second amended dispute summary, almost two months after the agencies finished their investigations.  (ECF No. 11-8 at 2.)  Thus,

---

[7] As explained above, the fact that the credit reporting agencies were not named defendants during the arbitration is immaterial, since *res judicata* requires only mutuality or privity of the parties against whom *res judicata* is asserted—in this case, the plaintiff.  *Barash*, 2009 WL 605182, at *8; *Kiryas Joel All*, 495 F. App'x at 186; *Pompano-Windy City Partners, Ltd.*, 1993 WL 42786, at *7.

the plaintiff could have brought his claims against TransUnion and Equifax during the arbitration.[8]

## CONCLUSION

"The purpose of the doctrine of *res judicata* is to protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions."  *Castellano v. JP Morgan Chase Bank, N.A.*, No. 13-CV-3390, 2014 WL 988563, at *7 (S.D.N.Y. Mar. 13, 2014) (quoting *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008)).  The plaintiff, having lost in state court, now seeks to relitigate nearly identical claims in federal court.  Accordingly, the motions to dismiss are granted, and the plaintiff's motion to file an amended complaint is denied.  The plaintiff's claims against the CFPB must be dismissed without prejudice because dismissal is based on lack of subject matter jurisdiction, but his claims against American Express are dismissed with prejudice.  The Clerk of Court is respectfully directed to close this case.


**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge


Dated: Brooklyn, New York
        January 10, 2023

---

[8] The plaintiff did not dispute his credit report with Experian until August 4, 2022, but as explained above, the plaintiff's proposed claims against Experian are "merely additional examples of the earlier-complained of conduct[.]"  *Cameron*, 253 F. Supp 2d at 620.